# **EXHIBIT A**

**MidCOUNTRY EQUIPMENT FINANCE®** A Division of MidCountry Bank

7825 Washington Avenue S., Suite 120
Bloomington, MN 55439

## EQUIPMENT FINANCE AGREEMENT

JAM Trucking, Inc
262 Moody Court, Lester, WV 25865

Contact Name: Justin Mason
Phone Number: (304) 890-5957
State of Organization: WV

| VENDOR | DEBTOR | SCHEDULE NO. |
|---|---|---|
| Martins Peterbilt of Kentucky | JAM Trucking, Inc | 0825 |

| EQUIPMENT FINANCED | COLLATERAL LOCATION, IF OTHER THAN DEBTOR'S ADDRESS ABOVE: |
|---|---|
| One (1) 2020 Peterbilt Model 389 VIN 2XPXD40X9LM663239 | NA |

| NUMBER OF MONTHLY PAYMENTS | MONTHLY PAYMENT | ADVANCE PAYMENTS | Install Term Date 12.1.2022 Payment Date 12.1.2022 |
|---|---|---|---|
| 60 | $4,218.61 | One at $4,218.61 | |

### TERMS AND CONDITIONS

The words YOU and YOUR refer to the "Debtor" identified above. The words WE, US, and OUR refer to MIDCOUNTRY EQUIPMENT FINANCE A DIVISION OF MIDCOUNTRY BANK (also referred to as "Creditor").

1. **EFFECTIVE DATE**: This Equipment Finance Agreement (this "Agreement") shall be effective when it has been signed by both Debtor and Creditor.

2. **EQUIPMENT FINANCING**: Subject to the terms and conditions contained in this Agreement, confirmation of delivery and acceptance of the equipment as described above, we have agreed to provide financing for the equipment, personal property, services and/or software (the "Equipment") described in this Agreement. This is solely a financing agreement. You selected the Equipment and the supplier from whom it was purchased. We are not responsible for any statements made to you by such supplier or any intermediary. **WE MAKE NO REPRESENTATION OR WARRANTY OF ANY KIND WITH RESPECT TO THE EQUIPMENT, INCLUDING ITS MERCHANTABILITY, SUITABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, OR VALUE.**

- 1 -

3. **NON-CANCELABLE UNCONDITIONAL AND ABSOLUTE AGREEMENT**: This Agreement cannot be cancelled or terminated except as expressly provided herein. Debtor agrees that its obligation to pay amounts due under this Agreement are absolute and unconditional and shall not be subject to any defenses, set off, abatement, reduction or counterclaims of any kind.

4. **TERM AND PAYMENTS**: You promise to pay us the total of all the payments that are indicated above, which can be determined by multiplying the number of monthly payments times the monthly payment amount and the other payments, all as indicated herein. Monthly Installment Payments are in arrears and shall begin on the first of the month set forth above ("Installment Term Date") and continue with equal, consecutive monthly installment payments for the term of the Agreement until all monthly installment payments and any additional amounts chargeable under this Agreement shall have been paid in full. The ("Commencement Date") of this agreement will be the same date the Debtor signs the Acceptance Certificate. In addition Creditor will separately invoice Debtor for the period from the Commencement Date to Installment Term Date ("Interim Period"). The payment for the Interim Period shall be an amount equal to the Monthly Payment divided by thirty (30) then multiplied by the number of days in the Interim Period.

5. **PREPAYMENT:** Debtor may prepay all, but not less than all, the remaining monthly payments. The payoff balance will be calculated by solving for the present value of all future payments at a discount rate of 4% per annum.

6. **SECURITY INTEREST**: To secure your obligations to us described in this Agreement, you hereby grant us a security interest in the Equipment and all accessions and additions thereto, and replacements thereof, and all proceeds of all the foregoing. You authorize us to file or record any and all Uniform Commercial Code financing statements, and amendments thereto, and other documents that we deem necessary to perfect and protect our security interest in the Equipment and the other collateral described in this Agreement. You agree to pay or reimburse us for any searches, filings, recordings, stamp fees or taxes related to the filing or recording of any Uniform Commercial Code financing statements or other instruments or statements showing our interest in the Equipment. The Equipment shall always be deemed and remain personal property even though it may become attached to Real Estate.

7. **EQUIPMENT**: You represent and warrant that you are the sole owner of the Equipment and hold good title thereto free of any liens, encumbrances, or interests of any kind except for the security interest we hold pursuant to this Agreement. You agree not to sell, transfer, assign, or dispose of the Equipment or any interest therein or to allow the Equipment to become subject to any liens, encumbrances, or security interests of any kind, except for our security interest, until all amounts payable by you under this Agreement have been paid in full.

8. **USE; INSPECTION**: You agree to use the Equipment solely in the conduct of your business, and in a careful and proper manner and only for lawful purposes and in compliance with applicable laws. Additionally, at your cost and expense you shall keep the Equipment in good repair, condition, and working order and shall furnish any and all parts and labor required for that purpose in accordance with applicable manufacturer's manuals and instructions. You shall not make any alterations to the Equipment without our prior written consent. All accessories, parts, replacements, additions, wiring, cabling, operating systems and software for or which are to or become attached to or installed in the Equipment shall immediately be deemed to be part of the Equipment and subject to our security interest and the terms of this Agreement. We shall have the right from time to time during normal business hours to enter upon your premises or elsewhere for the purpose of confirming the existence, condition, and proper maintenance of the Equipment. If the Equipment is covered by a maintenance agreement that has been entered into between you and the supplier or another provider and even if the cost of such maintenance agreement has been financed by us, you agree that we are not responsible for repairs, service, or maintenance of the Equipment. You acknowledge that we have no involvement in your maintenance agreement, and if you become dissatisfied with the person performing the maintenance or service you will not withhold any payments, or any portions thereof, that are required under this Agreement.

- 2 -

9. **LOCATION**: You will keep the Equipment at the address shown on the first page of this Agreement and you agree the Equipment shall not be removed from such location without thirty (30) days prior written notice to us and our prior written consent. You will not make any material changes to the Equipment without our prior written permission, nor shall you permanently fasten the Equipment to real estate.

10. **LOSS OF EQUIPMENT**: In the event that the Equipment becomes lost, stolen, or damaged, as long as you are not in default under this Agreement or any other agreements with us, you shall have the opportunity to: (a) replace the Equipment with the same type of equipment, (b) have the Equipment repaired to a like condition by an authorized supplier of the Equipment, or (c) pay to us the entire remaining unpaid balance under this Agreement pursuant to section 12 herein. You agree to notify us immediately of any such loss or damage.

11. **TAXES AND CERTAIN FEES**: You agree to pay all fees, assessments, taxes and other charges imposed upon the purchase, ownership, possession, operation, control, use, or maintenance of the Equipment. If we pay any of these charges or any related penalties or fines for you, you agree to reimburse us upon demand for the entire amount advanced by us. Any sums paid by us shall not be deemed a waiver of, or release you from, the obligation.

12. **INSURANCE**: Throughout the term of this Agreement, you agree to maintain (i) general property damage insurance covering the Equipment for its full replacement value against loss, theft, damage, and destruction and naming us as a loss payee; and (ii) such other insurance and amount as we may require. Upon our request, you agree to provide us with certificates or other evidence of such insurance which shall be in a term, amount, and with companies reasonably acceptable to us and shall provide that we be given thirty (30) days prior written notice of any material policy alteration or cancellation. If you do not provide evidence of property insurance acceptable to us, we may, but shall not be required to, buy such insurance to protect us and add the cost, including any customary charges or fees associated with the placement, maintenance, or service of such insurance (collectively, "Insurance Charge"), to the payment amounts due from you. You agree to pay the Insurance Charge in equal installments allocated to each remaining payment (with interest on such allocations up to the maximum rate permitted by applicable law). Nothing in this Agreement creates any insurance coverage and we may terminate or allow to lapse any coverage without having any liability to you. You hereby appoint us as your attorney-in-fact to make claims for, receive payment of, and execute and endorse all documents, checks, or other drafts for loss, theft, damage, or destruction to the Equipment under any property insurance. In all circumstances, you shall cooperate with us or our agent with respect to the placement of insurance and processing of claims.

13. **DEFAULT AND REMEDIES**: If you (a) fail to make any payment when due; or (b) fail to perform any of the terms, covenants, agreements, or conditions of this Agreement; or (c) provide us, or if you have previously provided us, any information that is false, misleading, inaccurate, or incomplete; or (d) change your name, or if you are a legal entity, change your type of entity, state of organization, or chief executive office without giving us at least thirty (30) days prior written notice thereof; or (e) cease or terminate the regular conduct or operation of your business; or (f) die, if you are an individual, or are dissolved or cease to be in good standing in all necessary jurisdictions, if you are a legal entity; (g) become insolvent or make an assignment for the benefit of creditors, or file a petition under the Bankruptcy Code or one is filed against you; or (h) a receiver, trustee, or conservator or liquidator is appointed with or without your consent; or (i) take any action that adversely affects our security interest; or (j) are in default or in breach of any term or provision of any other agreement between you and us, then in any of such events you shall be in default under this Agreement and we may exercise any one or more of the following remedies: (i) accelerate, declare due, sue for and receive from you the sum of (x) all payments and other amounts then due and owing under this Agreement, and (y) the present value of the sum of the payments for the unexpired term of this Agreement discounted at the rate of one percent (1%) (the "Discount Rate"); (ii) similarly accelerate the balances due under any other obligations you owe us; (iii) take immediate possession of the Equipment without obligation to post a bond, the same being expressly waived by Debtor, and lease or sell the Equipment or any portion thereof upon such terms as we may elect, and to apply the net proceeds, less reasonable selling and administrative expenses, on account of your obligations hereunder;

- 3 -

(iv) charge you interest on all monies due us from and after the date of default at the rate of one and one half percent (1 1/2 %) per month until paid, but in no event more than the maximum rate permitted by law; (v) require you to deliver all the Equipment and other collateral, at your expense, to a place reasonably designated by us; and (vi) charge you for all the expenses incurred in connection with the enforcement of any of our remedies including all costs of collection, reasonable attorney's fees and costs and disbursements; (vii) set off the amounts you owe us against any deposits you have with us or any other amounts we may owe you; and (viii) any and all other rights and remedies available to a secured party under the Uniform Commercial Code or other applicable law. All our remedies are cumulative, are in addition to any other remedies provided for by law and may be exercised either concurrently or separately. Exercise of any one remedy shall not be deemed an election of such remedy or to preclude the exercise of any other remedy. No failure on our part to exercise any right or remedy and no delay in exercising any right or remedy shall operate as a waiver of the right or remedy or to modify the terms of this Agreement. A waiver of default shall not be construed as a waiver of any other or prior, concurrent or subsequent default. If under any circumstance, Creditor shall have received anything of value deemed interest which would exceed the highest lawful rate, an amount equal to the excess interest shall be applied toward reduction of the principal obligation owing to Creditor.

14. **LATE CHARGES; TIME IS OF THE ESSENCE TO THIS AGREEMENT:** In the event that any payment(s) required under this Agreement are not received by us on their due date, you agree to pay in addition thereto a late charge equal to five percent (5%) of the amount of said payment(s), plus interest at the lesser of the highest rate permitted by law or one and one half percent (1 1/2 %) per month, plus other amounts as permitted by law. You agree to pay us a returned check or non-sufficient funds charge in the amount of $30.00, or if less, the maximum amount permitted by law.

15. **ASSIGNMENT:** You have no right to sell, lease, trade, transfer, or assign any interest the Equipment without Creditor's consent. We may, without notice, sell, transfer or assign our interest in this Agreement, the Equipment, or any payments due hereunder. If we make any such assignment or transfer, the new owner will have all of our rights and benefits but none of our obligations. The rights of the new owner will not be subject to any claims, defenses, or set offs that you may have against us. You acknowledge that any assignment or transfer by us shall not materially change your duties or obligations under this Agreement nor materially increase your burdens or risks. Upon notification of such an assignment, you shall remit payments directly to the address set forth on the notification.

16. **NOTICES:** All written notices relating to this Agreement shall either be sent by first class mail, certified mail, return receipt requested, or nationally recognized overnight courier service or delivered in person to such party and address as is specified herein, or at any other address that such party specifies in writing.

17. **JURISDICTION. THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER, SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF MINNESOTA (WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES OF SUCH STATE), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, REGARDLESS OF THE LOCATION OF THE EQUIPMENT.** Debtor hereby irrevocably submits and consents to the jurisdiction and venue of the state and federal courts located in Minnesota for purposes of resolving all disputes of any nature whatsoever regarding this Agreement, or any transaction contemplated hereby, and Debtor hereby irrevocably waives any objection which it may now or hereafter have to the jurisdiction or venue in the federal or state courts of Minnesota. Debtor agrees that any suit Debtor may bring to enforce any claim arising out of this Agreement or any course of conduct or dealing of Creditor shall be brought and maintained exclusively in any Minnesota state or federal court. Nothing herein shall affect the right of Creditor to bring any action or proceeding against Debtor in the courts of any other jurisdiction.

18. **WAIVER OF JURY TRIAL. DEBTOR AND CREDITOR HEREBY IRREVOCABLY WAIVE THE RIGHT TO TRIAL BY JURY OF ANY CAUSE OF ACTION, CLAIM OR COUNTERCLAIM IN ANY ACTION OR PROCEEDING WHATSOEVER BASED UPON, ARISING OUT OR, OR IN ANY WAY PERTAINING OR**

RELATED TO THIS AGREEMENT, OR ANY OTHER AGREEMENT OR INSTRUMENT EXECUTED IN CONNECTION HEREWITH OR ANY OBLIGATIONS HEREUNDER OR THEREUNDER. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY DEBTOR AND CREDITOR, WHO ACKNOWLEDGE THAT NO REPRESENTATIONS HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THIS WAIVER SHALL APPLY TO ANY AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT OR SUCH OTHER AGREEMENTS OR INSTRUMENTS.

19. **INDEMNITY**: You shall indemnify, hold harmless and, if we request, defend us against all claims directly or indirectly arising out of or connected with the Equipment or this Agreement. Claims means all losses, liabilities, damages, penalties, expenses (including attorneys' fees and costs), claims, actions and suits, arising out of ownership, possession, operation (regardless of where and how and by whom the Equipment is operated), control, use, condition (including but not limited to latent and other defects, whether or not discovered by you), maintenance, and delivery, of Equipment, or in the event that you are in default, arising out of the condition of any item of Equipment sold or disposed of after your use. The indemnities and obligations herein provided shall continue in full force and effect notwithstanding the termination of this Agreement.

20. **CREDIT INFORMATION**: You hereby authorize us to obtain credit bureau reports and make any other credit inquiries as we deem necessary. You warrant that this is a commercial and business transaction and not a consumer transaction. You further warrant that all credit information and financial statements that you have given to us at the time of your credit application are true, accurate and complete. If we request, you will provide us current interim and/or annual financial statements or tax returns during the term of this Agreement.

21. **REPRESENTATIONS AND WARRANTIES**. You represent and warrant that (a) you are the type of entity set forth above and, if a legal entity, is duly organized, validly existing and in good standing under the laws of the state set forth above; (b) its execution, delivery and performance of this Equipment will not violate or create a default under any law, regulation, order, agreement or charter document binding on you or your property; (c) this Agreement has been duly authorized, executed, and delivered by you; (d) the signor of this Agreement has the authority to bind you to this Agreement; (e) the Equipment will be used solely for business purposes and not for personal, family or household purposes; (f) the Equipment is and shall remain located (or, in the case of titled motor vehicles, garaged) at the location set forth above which location is owned or leased by you; and (g) at the time that you request to fund any portion of the financed amount, the Equipment shall have been delivered to the Location and shall have been fully installed, and be in good working order; (h) You shall have irrevocably accepted the Equipment and you shall have good and marketable title to the Equipment, free and clear of any liens, claims, security interests or rights, other than the Security Interest. (i) You are not now, nor shall you be named on the U.S. Department of Treasure Office of Foreign Assets Control (OFAC Specifically Designated National and Blocked Persons List (SDN List). Furthermore, neither you nor any affiliated entity shall be directly or indirectly owned fifty percent (50%) or move in the aggregate by one or more Blocked Persons nor be designated as a Blocked Entity by OFAC; (j) the Equipment will not be used to store, transport, contain or deliver any Hazardous Materials in violation of any Environmental Laws or transport any persons for hire. The term **"Hazardous Materials"** means any wastes, substances, or materials, whether solids, liquids or gases, that are deemed hazardous, toxic, pollutants, or contaminants, including but not limited to substances defined as "hazardous wastes," "hazardous substances," "toxic substances," "radioactive materials," or other similar designations in, or otherwise subject to regulation under state or federal laws. All representations and warranties made herein shall survive the execution, deliver and termination of this Agreement

22. **MISCELLANEOUS**. Should any provision of this Agreement be found invalid or unenforceable for any reason, the remainder of this Agreement shall service in final force and effect. In our sole discretion, this Agreement and certain documents related to or required in connection with this Equipment may be delivered by telecopier ("fax") transmission and the fax copy of any such document shall be deemed an original and admissible as such in any court or other proceeding. Without limiting the foregoing, you will send us, on request, any document bearing your original signature. No delay or omission on the part of us in exercising any right hereunder shall operate as a waiver of such right or of any other right under this Equipment or under any other

- 5 -

document or instrument executed or delivered in connection with this Equipment. You shall pay, on demand, our costs, fees and expenses incurred in connection with this Equipment, any amendment, waiver, release or termination of this Equipment or any related document, financing statement, title certificate or instrument, including but not limited to filing and recording fees. This Equipment is binding on and inures to the benefit of the parties hereto, their permitted successors and assigns. Any written notice hereunder shall be deemed given when delivered personally, sent via fax (transmission confirmed) or deposited in the United States mails, first class, certified or registered mail, addressed to recipient at its address set forth above or such other address as may be substituted therefor by notice given pursuant to the terms hereof. If more than one Debtor is named herein, the obligations of each shall be joint and several. You authorize us to obtain such credit bureau reports and make such other credit inquiries as we deem appropriate; and on written request, we will identify any reporting agency used for such a report which complies with Section 326 of the USA PATRIOT Act, which mandates the verification of certain information about you while processing the account application. The exchange of signed copies by facsimile or electronic transmission shall constitute effective execution and may be used in lieu of manually signed documents and shall be admissible evidence for purposes of enforcement. For purposes of perfection of a security interest in chattel paper under the UCC only the counterpart of this Agreement that bears our manually applied signature and marked "Original" by us shall constitute the original of the chattel paper for purposes of perfection by possession.

23. **ENTIRE AGREEMENT**: You agree that this Agreement contains the entire agreement between you and us and it may not be changed, amended, modified, rescinded, terminated or otherwise altered unless in writing and signed by both you and us.

**CREDITOR:**

**MIDCOUNTRY EQUIPMENT FINANCE
A DIVISION OF MIDCOUNTRY BANK**

BY: _Stephen M. Snater_

~~Mark Musgjerd~~   Stephen M Snater
PRINTED NAME

~~Vendor Finance Manager~~   EF President
TITLE

11/20/2022
DATE

**DEBTOR:**

**JAM TRUCKING, INC**

BY: _____

Justin Mason
PRINTED NAME

President
TITLE

11-15-22
DATE

- 6 -